Good morning again, ladies and gentlemen. The last case of the day will be American Color Graphics v. Travelers Property Casualty Insurance. Counsel? May it please the Court, my name is Paul Glad. I'm with the firm of Sonnenschein, Nath & Rosenthal. I'm here representing Travelers along with Mr. Capel. Mr. Capel and I would like to reserve four minutes of our time. We've divided our time eight minutes each at the outset. All right. You'll have to keep track of your own time. If you go over the eight minutes, you'll be eating into Mr. Capel's time. I understand. Thank you, Your Honor. I will address the question of whether bad faith tort damages are appropriate here. Travelers understands that it lost the case below and that based on the jury's verdict, it's going to have to pay something, but it contests that the form of those damages are tort damages. So if you paid only contract damages, you paid seven cents? Well, there is a question about whether these damages should more appropriately be classified as contract damages, and we would not dispute that Travelers has to make a payment because of the judgment below. Secondly, I will address, if I have time, the determination here that punitive damages were appropriate, whether the conduct here met the high threshold required for punitive damages under 3294, whether you have clear and convincing evidence of fraud, oppression, or malice within the meaning of the statute. I will not be addressing, because of the lack of time, the ratio between punitive damages and the substantial $140,000 compensatory damages award. I will point out that this case is a case where the trial judge said Travelers' conduct was conduct of low reprehensibility. I will also point out that in the Baines LLC v. ARCO Products case, $60,000 was held to be a substantial award. So neither of you intend to address the ratio issue? No. That's correct, Your Honor, unless the Court has questions. That's the one thing I wanted to address, so go ahead with your argument. Well, if you have questions, I'm certainly prepared to answer them, Your Honor. Mr. Capel is going to be fundamentally addressing the order requiring arbitration of attorney's fees, and he will also address, if he has time, whether there is evidence here to support the $140,000 award. Try as we might, we can't make the sums add up to $140,000, even indulging every deference on their behalf. We don't plan to address the motion to strike, and we don't plan to address the grant fees issues again, unless the Court has questions. As I hope the Court recognizes, the judgment here is unique. The judgment is unique because, to my knowledge, this is the first time a judgment of this nature has ever supported a bad-faith verdict. This is not a case where an insurance company refused to pay a claim. This is not a case where an insurance company refused to provide a defense. This is not even a case where an insurance company delayed defending or paying a claim. This is that unusual case where Travelers was found to be in bad faith for paying one out of hundreds of workers' compensation cases presented to it. We believe that this case threatens the historic functioning of the workers' compensation system, and that upholding the determination made here would require insurers to litigate close cases rather than settling them and face exposure to bad-faith liability. Now, there were three amicus briefs that were filed by parties supporting Travelers here, and one brief filed supporting ACG. The amount of amicus attention here, and I hope you'll admit and review all these opinions, arose because of the unique nature of this judgment. These briefs point out that bad-faith liability historically has been reserved for situations where one of the sacred promises, a promise to defend, promise to indemnify, was breached, and bad faith has not been applied where insurers have actually paid the claims when there has been no delay in payment. Well, see, the problem is that's the usual case. But here it's you're paying with their money. So I mean, it doesn't really parallel the typical case where the insurer doesn't pay out to the insured. It is absolutely – I'm sorry. It is absolutely true that responsibility for the payment arises through the deductible. However, the basis for creating the insurance exception, the unique situation where bad faith is found for breach of contract, is the fact that the courts believe that there needed to be a protection granted to the policyholder to assure that a defense or an indemnity was provided at a time of extremis. The courts have made it clear in cases like Waller, Cates, Foley, and most importantly, Neal v. Jones, that this is not the general rule just because an insurance company is involved. And in Neal v. Jones, the court went out of its way to explain the limited nature of the exception and that in most circumstances, what you have is a business dispute that should be resolved through business matters. In Neal v. Jones, the California Supreme Court described the question it was looking at as one which concerns our understanding of when tort damages will be available for an insurance company's breach of the implied covenant of good faith and fair dealing. The remedy for breach of that covenant is generally limited to contract damages. But we have recognized an exception to this rule when the breach occurs in the context of an insurance company's failure to properly settle a claim against an insured or to resolve a claim asserted by the insured. Now, Neal v. Jones, the conduct at issue there was the insurance company, in the words of the court, knowingly charged the employer a premium, throwing that employer into bankruptcy, knowing that that premium was not owed. But the Supreme Court said that's a business dispute and should be settled in the business fashion. They concluded, the trial court concluded that tort remedies were available, but the court of appeal disagreed and reversed. We conclude for reasons explained below that the court of appeal is correct. Now, there's something really important beyond the limitations drawn for tort liability, and that is that if this judgment is upheld, these three amicus briefs all recognize that this will distort the workers' compensation system and have dramatically negative implications for injured workers. All three amicus briefs raise this, but the workers' compensation brief, if I would institute brief, I would especially call to your attention. It's a brief filed by an organization that's made up of employers, people like ACG, insurers, and self-insurers. And they highlight that the workers' compensation system is a no-fault system, which by statute resolves all doubts in favor of the injured worker. They highlight that allowing million-dollar tort liability for acceptance of a payment of an unclear claim creates a conflict which will lead carriers to resist settlement. They explain, highlighting decisions by Justice Trebrner in cases like Noe and Unruh, that the Supreme Court has refused to give injured workers this kind of remedy, and they say that the employer who decides to purchase insurance and who talks and understands the form of payment is the one who has the power of the market. And we highlighted Neal v. Jones in Emerald Bay to say that the power of the market should be the remedy for the parties and not tort liability and thus contract damages should be the remedy. I need to step aside and let Mr. Cappell have the floor. Good morning. David Cappell, Gordon and Reese on behalf of Travelers also. I will direct my attention principally to the issue of the erroneous allow of American Calligraphics to recover under Civil Code Section 1717 and the inadequacy of the proof of the damages, if I have time, of a claim of $140,000. I am also prepared to address questions of the Court regarding grant fees and the motion to strike, but do not plan to address that. Finally, amended briefs were filed by American Color at the order of the Court recently. Those would change some citations in Travelers' Briefs. We don't plan to attend to that today, but if the Court would like us to file amended briefs, we'd be prepared to do that as well. With regard to recovery of attorney's fees under Civil Code Section 1717, we are only here today because of reversible error stacked on reversible error based on unsubstantiated assertions of American Calligraphics, which led the district court to allow recovery under 1717. Specifically, it was error to allow American Calligraphics, after refusing to allow testimony at trial regarding attorney's fees, to submit them after trial. It was error to commit to consider a fee provision in a 2005-2006 contract in conjunction with the 2002-2003 policy, which is the only agreement in issue here. It was error to consider American Calligraphics' unsubstantiated assertions in its brief. And finally, even if the 2005-2006 agreement is considered, it was error to allow recovery under it in light of the forum selection clauses and the choice of law clauses contained in the wording presented to the Court in that agreement. With regard to the issue of the late waiver of the attorney-client privilege, there is no question that American Calligraphics, a large multi-state corporation, whether by reason of gamesmanship or desire to assert the attorney-client privilege, withheld the bills of the attorneys until after trial. The privilege was asserted during trial, including in connection with the motion for reconsideration. American Calligraphics... I'd actually seize all your supporting documentation. Understood, Your Honor. The difference here is that we did ask for the information prior to trial. But would you have been entitled to the information you asked for if they were not seeking to make the attorney's fees part of damages? Say they decided in advance that the attorney's fees would only be requested when they sought costs. Would you then have been entitled to the information? If I could, I'd like to answer that question in the specific context of this case. In the context of this case, there is no question that they were seeking their attorney's fees prior to trial. No, no. That's not the question I'm asking. The question you asked, Your Honor, you're right. If they were not seeking them as damages, they could submit them after trial. Right. And with that, if I could, I'd like to move on in light of the constraint. Well, no, I, you know, I want to make sure I understand this because typically people ask for their attorney's fees before trial. They put it in their complaint, tell the judge. You put the judge on notice, put the other side on notice. Then you don't get, you don't make your fee application until the conclusion of the case. And it's costs. Correct. It's costs or it's contractual or statutory, depending on the nature of the case. So here you're, are you saying that because they potentially were going to use it as damages and they didn't turn it over to you, that they somehow waived their right to assert it as costs? Yes. And what's the best case for that? The Steine case, Your Honor, that's cited in our briefs. I'll be very brief in light of my need to reserve, or need to reserve time. Very simply, regarding civil codes, again, specifically on Section 1717, the contract that's at issue is not in the record if there is such a contract. There is no error raised by American Color Graphics about something that prevented American Color from introducing a contract that was in effect at the relevant time. Even assuming that there's such a contract had been admitted, the choice of forum clause is quite clear. The Dock Cider case, which is cited in our briefs, is not even responded to by American Color Graphics, which requires that the litigation under that agreement be instituted in Connecticut. The choice of law provisions also, we're not dealing with California residents. We're dealing with a contract. Let me just stop again on this question. You're saying that it's not the 2002 and 3 contract. There's no 2002. There is no contract in the record to that. That is correct, Your Honor, absolutely. And you're saying that it's a 2005-6 agreement that you're looking to for the forum selection. If we get that far, and that's what happened in the district court based on assertions made by American Color Graphics, and if you're going to Did you make this argument below? Yes. Okay. And with that, I will reserve the remainder of our time, unless there are any other questions from the panel. Thank you, counsel. Thank you. Good morning. May it please the Court. My name is Richard Bush, and I represent American Color Graphics. This case comes to this Court following a nearly three-week jury trial in which, after hearing all the evidence, the jury in the district court found and confirmed that Travelers breached its contract with American Color Graphics and engaged in bad faith by, in the words of the district court, its repeated lies by the various witnesses that all testified on behalf of Travelers, including the district court found on the witness stand. The jury, in fact, awarded American precisely the damages it asked for on both counts, and the district court, having heard all of Travelers' misdeeds, having heard all of the evidence, confirmed the jury's verdict. The court, while reducing the jury's punitive damage award, still awarded what it found was the most due process could allow, based upon what it found was the malicious and bad faith conduct of Travelers, including a finding that Travelers was purposefully deceitful, both before the litigation and while testifying at trial. On this appeal, the Court reviews the factual findings of the district court for clear error, meaning if there's any facts in the record to support the jury's verdict and the district court's verdict, the court should affirm. Nonetheless, Your Honors, judged by any standard, the verdict and the judgment of the district court should be affirmed. On our cross-appeal, and this was something that was a little bit gotten into on the argument by Travelers, the attorneys' fees issue I want to clear up right away because that goes to our cross-appeal. The record is very clear that while we did ask for attorneys' fees as damages, we arranged with Mr. Capel to provide him with the amount of our attorneys' fees. Mr. Capel never moved to compel those, the actual fees. We provided him with an update, never filed a motion in limine, trying to exclude those fees, never complained at any time about the issue, never met and conferred on it. The first time anything was raised was at the trial, and in response to that, we offered to provide the attorneys' fees at that time. I'll also point out that the attorneys' fees for the trial work, for the month leading up to the trial, for post-trial work, was not available at that time in any event. And it was error in that regard for the district court not to, at least in post-trial, consider those fees as damages. Your Honors, I'm going to address point by point, and I'm willing and able to discuss any questions Your Honors may have. You didn't put on evidence at the trial of the fees, right? No, Your Honor. We did not, because of the objection by Mr. Capel during the trial for the first time about it. In response to that, we offered to submit them at that time and raise with the district court the issue of never having before complained about the nonproduction of the fees, and we're willing to turn over the fees at that very moment. You didn't have a pretrial order in this case? Yes, we did. And were your fee documents included in the pretrial order? The documents were not. No documents were included in the order. However, the pretrial order. A list of exhibits would have been included. No. Correct, Your Honor. The attorney's fee bills were not listed as exhibits. However, in our jury instructions, we identified that as an element of a damages, the joint jury instructions. What were you going to do, just get up there and tell the jury that your attorney's fees were X with no documentation? Yes, Your Honor. That was what we were going to do. We had the attorney's fees. When he complained, we could have turned them over at that time. And of course, Your Honor, we did turn them over after the trial was over. But it seems kind of late in the day at the trial to all of a sudden, without any documentation, be able to offer an amount. I understand what Your Honor is saying. The agreement, we had promised to provide them with the amounts. There never was a complaint about it. It was ñ there never was a meet-and-confer complaining about it, no motions eliminating nothing. I understand what Your Honor is saying, though. Your Honor, I want to go through ñ Yes, Your Honor. The primary cases that Your Honor should review are the McGregor case, the security systems case, and, in fact, the Neal v. Jones case that counsel for travelers even mentioned. The Neal v. Jones case, which was highlighted, was a case in which there was no   It was a case in which there was no documentation. by counsel for travelers is a 2004 case that fully supports this proposition that this is the type of bad faith claim that should be allowable to be pursued. In the Neal v. Jones case, the reason why the court did not allow the bad faith damages was for several reasons. First, the court said it was a billing dispute that did not deprive the insured of the benefit of the contract. Second, there was no requirement that the insured have to file a lawsuit in order to resolve the issue. Why does the conduct at trial and the correspondence back and forth have anything more to do with the insurance claim than the billing dispute? Because in this case, Your Honor, the ñ what all these cases say, what Neal v. Jones says ñ and what Neal v. Jones says, by the way, Your Honor, is that there was no  And so the mishandling of the claims, the allegation of mishandling of claims, goes to the heart of the relationship between the insurer and the insured that gives rise to a bad faith claim. And that is precisely what we are arguing here. In each of these cases, security ñ Kennedy. You don't show that the settlement, the claim would have been any different? The McGregor case rejects that proposition. In the McGregor case, the Court specifically said they didn't try to make the same arguments the travelers made. Well, you have to show ñ you have to basically have a trial within a trial. And there's California law that says, no, you don't. The obligation is to investigate the claim, particularly where you have a lost policy for travelers. Well, they didn't ñ they didn't investigate it. Not a very good job, but they did investigate. Not just not a very good job. They didn't do an investigation. They didn't contact witnesses. They lied to the ñ this is the important thing, Your Honor, here. Travelers gets 15 percent kicker for every dollar that American Color has to pay. They're not only playing with American Color's money, but they actually get 15 percent. They have it in ñ You contracted for that. Yes. But by contracting for that, that doesn't mean that they just get a ñ And they did pay your claim. No. We paid the claim. They did settle it. They settled it with our money and got 15 percent on top of that. They settled 800 other claims. Your Honor ñ And there's no complaint about that. They have complete control over the files. They have complete control over the note system. And so one ñ one bad claim, you think, warrants a tort liability. Yes. But I'll also point out that we served a document request in this case, and this was part of the evidence at trial. We served a document request asking for information from other claims. They immediately contacted us and said, we're going to terminate your insurance, first raise your premiums 50 percent. We're going to not renew your policy. We're not going to discuss any claims with you unless you immediately withdraw that document request. That went into evidence at trial. So for them to get up and say, for example, oh, we did a wonderful job in these other cases, they extorted, basically, a withdrawal of our document request in this litigation. And that was evidence that was part of the record in this case. I want ñ On the determination of whether this is an appropriate case for such a claim, is the trial evidence relevant, or is it the evidence up to trial as to whether the claim should be able to proceed? It is both. They have a duty of good faith and fair dealing. Their obligations to their insured as set out in the McGregor case, the Lance Camper case, sets it out to timely and competently investigate claims, to adequately evaluate a claim, to put an experienced claims adjuster on your claim, to make client files available. The Lance Camper case, the security systems case ñ and by the way, there are cases where there was only one claim at issue and a bad faith claim was allowed to go forward. The bad faith claims started over single cases. A bad faith claim is usually where you fail to pay an individual claim. Your Honor, a bad faith claim can arise in different cases. For example, in the McGregor case. I don't ñ you seem to be trying to disagree with me. Oh, you want to agree with me? Yes. Yes. But what I'd like to know is in this case, what was the fraud? What was the fraud? Yes. The fraud was anything. What was the finding of fraud based on? The finding of the fraud was based on the fact that this woman had degenerative arthritis of the hip before she started working. She admitted ñ and this was all information that travelers never found out about because they did no investigation. She had a preexisting problem and had to lay down in her car every day when she ñ Well, that's just ñ It's her fraud. No, no. Was it the failure to investigate the account? Oh, what was her fraud? The fraud of travelers. Yes. The fraud of travelers was the only way ñ and this goes to some of the other cases. They mentioned this in some of the other cases as well. The only way we get information from claims is by their internal note system. They actively misrepresented the results of things that occurred during the claim in the note system. For example, they said that they were going to pay the claim because a doctor found that this injury probably occurred in the work environment. The woman, the traveler's adjuster, admitted that that was a lie, that she put that in there and it wasn't true. She also put in the claim system that our human resource manager agreed that the injury occurred the way that the claimant said it did. At trial, she admitted that was a lie, that she never had that conversation. The next claims adjuster came in and said ñ and this is when they paid for the ñ when we paid for her hip replacement ñ said, I'm sending her to this doctor for an evaluation ñ this is what she put in the note system ñ an evaluation to determine whether this was employment-related. She admitted at trial she never did that. This claims adjuster said, in fact, that the doctor found that she needed a hip replacement because of her hip injury. She admitted at trial that was a lie. Then it gets elevated to the next level, home office in Connecticut, where a person starts writing letters, American colors complaining. The person starts writing letters repeating those very same lies and lying about results. Once we complain ñ and by the way, this is very important ñ you have to contest the claim within 90 days. After that 90 days is up, it's very difficult to do anything. So to justify their failure to do anything, he starts lying in letters where he misrepresents all the different facts to American color, hoping that we'll never find out about it because they control all the information. The district court specifically found that the witnesses for travelers, every single one of them, essentially committed perjury on the witness stand, said that these people not only lied when they were involved in the claim, but came to the courthouse in Oakland, California, sat on the witness stand and committed perjury. Every one of them. And if that does not require a finding for compensation and deterrence and the maximum punitive damages, I don't know what would. And I'd be happy to address that. But all of these cases, the Neal v. Jones case, which was relied on, says specifically claims handling goes to the heart of the relationship. Lance Camper, security systems, Notrica, TriCorp, all of them have the same If you read McGregor, there's no substitute to reading these cases. Travelers, with all due respect, they pull a sentence out here, a sentence out there. When you read the case, it's very clear that a bad faith claim, the mishandling, misrepresenting of facts to your insured goes to the heart of these claims. When we go to your point that you think this justifies the maximum punitive damages. Yes, Your Honor. I would love to discuss that. I believe that with the Supreme Court's guidelines on four might be reaching the constitutional ceiling. It'd be rare that you'd have it in double digits. And then you have the criteria laid out by State Farm. I'm having some trouble reconciling that Supreme Court law with your statement that this case, which is a single mishandling of a claim, justifies the maximum punitive. Okay. I'd love to discuss that. And I'll just discuss it in the order in which Your Honor just mentioned it, but in reverse. And the reason why I say that is because I think the facts here are the type of facts that lead to the requirement that they be the maximum due process allows and nine or ten times would be appropriate under the circumstances. First. Well, that's not what the maximum is, first. It says significantly in excess of 10 percent. No, Your Honor, violate the Constitution. It would be rare and violate. Right. Significantly in excess of ten times. But right now, we're right at ten times. So we're not significantly in excess of nine or ten times. Right now, we're right there. We're right at what State Farm allows under the law. We're right there. And in this case, one has to take into account the financial status of the defendants. Now, let me ask you, are you talking about at this point, I just want to understand. Yes, sir. Are you talking about what would be unconstitutional or what would be excessive as a matter of discretion? What I'm talking about would be unconstitutional. Okay. That's fine. So you can talk about the unconstitutional. Okay. So on the unconstitutional nature of it, we're talking about $1.4 million on $140,000 compensatory damage award. This Court has said and other courts have said that the financial for compensation and deterrence, there has to be some amount to deter a company from doing what they've done within the constitutional limits. The $140,000 or $400,000 or $500,000 would do nothing to these defendants. They have to be taught a lesson that you can't actively lie to your insured, and then you can't come into court and commit perjury not just by one witness, but by several witnesses as the district court found, without having some deterrence. And we keep coming back to this point that it's only one claim. It's not necessarily only one claim. It's the claim that came to our radar. Well, we can't assume. We don't have anything else in the record. We don't have anything else. But what we do have in the record is that these defendants faced with a document request in this litigation that asked for information of their claims. And remember, they have all of the information, every bit of it, said, if you go forward with this document request, we will be terminating your workers' compensation insurance. And that's no small thing. As the record shows, American Color actually ended up going, filing bankruptcy, and they were in a very difficult financial position and could not afford to switch workers' compensation insurers. You have to keep your letters of credit with your workers' compensation, it's all in the record, with your workers' compensation insurer that you had, and then post new letters of credit with the new workers' compensation insurer. They wouldn't have the financial ability to do that. Travelers knew that full well. So they stopped American Color in this litigation from getting that information. So that is a very important fact. Also, when we're talking about the degree of reprehensibility here, what we're talking about, and State Farm has said we have not struck down on constitutional grounds any single-digit multiplier, and the Simon case in California that we cite makes clear that there is not a single-digit multiplier to call into question due process considerations at all. So when you add up all of the things that are in the record, and it's not just one claim, you can't look at it that way with all due respect. Well, if you do, let's assume we looked at one claim. Well, you can look at it, but you have to look at the acts. And the acts are multiple acts of deceit, multiple lies throughout the course of the litigation, through the course of the claim, and then when it gets elevated, the senior people, travelers, continuing the misrepresentation, and then when it gets to – when the litigation gets filed, the threats and the failure to – the threats that are made during the litigation to prevent the insured from getting information, they have an obligation to turn over files. Would you like to save two minutes for a rebuttal? Oh, no. Sorry. Sorry, no rebuttal. I do want to – I do want to address one thing, because I'm not going to have a chance to address this, but the issue of the 1717 is a very important issue. Mr. Kellogg testified to CFO when he submitted affidavits that the insurance policy with American Color Graphics and Travelers has been in place unchanged from 1991 to the present. He testified that in – that the insurance policy and the contract are the same thing, signed at the same time every single year. The attorney's fee provision in what they call the agreement says specifically that it applies to all agreements past or future between the parties. So Mr. Kellogg testified that they are all the same, that they've been the same, the attorney's fee provision is in all the agreements, and that when he testified at trial that this – these agreements have remained unchanged from 2000 to the present, he was concluding the provision about the attorney's fees. In post-trial briefing, Mr. Capella is wrong. They did not raise any question that the 2002 agreement did not contain the attorney's fee provision or it was somehow different. They didn't raise that issue. If they would have raised it, we would have been happy to submit it. It was unnecessary.  for all agreements past or future. And Mr. Kellogg testified and submitted affidavits saying that the same provision has been in every agreement since they've been with Travelers. They didn't respond to it. They didn't say anything about, well, you didn't submit the 2002 part of the attorney's fees, so it's waived. Never did they raise it. They complained about the filing of a – of the documents post-trial because they said, well, it should have been submitted at the trial, which was rejected because you plead and prove your attorney's fees under 1717 post-trial. But they never raised this issue. And, in fact, if Your Honor looks – if Your Honors look at the decision by the district court on their objections, the district court specifically references that Travelers doesn't complain about the relevance or that this is not the right agreement. Never did they – never did they raise that issue. So I have 13 seconds to finish with any questions Your Honors may have. But hearing none, thank you very much. Thank you, counsel. I would try to go as quickly as I can. I have four points here. One is the reason why the distinction between a single claim and multiple claims is important is as we briefed on page 7 of our reply brief in all of the workers' compensation security officers' type of claims, there was an interwoven pattern of claims. Let me ask you, is counsel correct that they sought discovery to see what the – how the other claims have been handled, and that you refused and said you would raise their premium? All statements about the alleged threats are totally unsupported by the record. We've had a number of issues in this case about statements made that lack support, and that's one of those. Did they testify to that at trial? No, Your Honor. There was no testimony that there was some threat or that if you were going to pursue this that there would be potential repercussions? Very briefly, since I was the trial attorney, the only testimony about a threat was a statement that was objected to on the basis of hearsay by a broker for American Color about what might happen. And the objection was sustained, so it was not offered for the truth of the matter, but to explain the state of mind of American Color. So in terms of the specific question, there was no statement in the record to that effect. It was, but you say it was not admitted for the truth. Correct. But to show that American Color believed that. But it was made by American Color's broker, not travelers. It was the broker's state of mind. Right. I'm hitting these other points quickly, Your Honor. But did they? The broker said that that would be what would happen with travelers. Your Honor, the statement by the broker happened in the fall of 2006, I believe. I could be wrong on the year. And the at the time, American Color was looking for alternatives to see whether or not it wanted to change its insurance from travelers to another company. Hartford was a company that it specifically had in mind. The broker told American Color that American Color determined to stay with travelers at that time. The evidence in the record is clear that American Color could afford to switch. But did they? Let me answer the question. I'm sorry, Your Honor. Go ahead. Did they seek discovery of the other rest of the claims? There was a request for information regarding the other claims, yes, Your Honor, and it was withdrawn. The whys and wherefores about why it was withdrawn, I can't – I don't believe that's all in the record, but there was a request made and the request was withdrawn. If I might, just in summary fashion, hit three points for you. One is that Judge Armstrong's comments about deceit were directed to the credibility of the witnesses during trial and the conflict between their comments and the claims notes. And it's critical to note that there is no evidence in the record that any representative of ACG ever read the claims notes before trial. So any such conduct flaked would not be relevant to any of the, quote, unquote, damage suffered by ACG. They never saw them until trial. Also, I would urge the Court to compare even the pejorative descriptions of travelers' misconduct here to the conduct found not to rise to the level of 3294 in Tomaselli and Shade Foods, cases that said that the kind of conduct which justifies punitive damages is conduct which is understood to be criminal in nature. At worst here, you have a negligent failure to investigate and misstatements about the record. Indeed, I would urge the Court, if it is still thinking about punitive damages being appropriate, to compare the conduct at issue here with the Court's description of conduct in State Farm v. Campbell. What's important is in State Farm v. Campbell, the Court held that a one-to-one ratio was appropriate. I think you will find that the nature of the conduct is far more egregious there, even viewing the conduct here as pejorative. And in that regard, I think it's important that the conduct we're talking about here is conduct which we have given every deference to their description. The final thing is I would seriously, honestly, and urgently implore this Court to look at the three amicus briefs, especially the one filed by the Workers' Comp Institute, because those briefs make clear the importance of having a no-fault workers' compensation system where claims handlers have discretion to settle cases. Those briefs make clear the threat presented by allowing multimillion-dollar tort liability for making an error. No, not an error. I mean, we're talking about a rule where there were cases handled fraudulently and deliberately, not making an error. Well, Your Honor, again, it is the handling of a single claim. And I would assert that from a hindsight perspective, almost any set of claims notes can be cross-examined and found to be wanting. But maybe not fraudulent. I mean, the question is, the flip side of your argument is, well, we don't want a lot of multimillion-dollar claims, but the possibility of punitive damages might also be some deterrent to making sure that people aren't basically fabricating the notes, might it not? Justice Tabriner talked about in the Noe case why he felt that the injured worker should not receive tort liability. He talked about not wanting to see a distortion of the system. He and these briefs all talk about all the checks and balances that exist within the statutorily governed workers' compensation system and how those checks and balances create a situation where every deference is given. This is not between the employee and the employer. This is between an employer and the insurance company. So what Justice Tabriner was counseling there isn't really applicable. But the problems created by allowing tort liability for decision-making within the workers' compensation system are the very same problems. And that's why what's said in Unruh and Everfield and Noe is so important. Anyway, thank you, Your Honor. Thank you very much. Thank you both very much, all three of you very much. The case is submitted, and the Court will stand in recess for the day. All rise. This Court's decision stands adjourned. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Reinhardt, McKeown, Archer